**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTINE LEMAY, | No. 2:18-CV-2272-DMC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

       Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties (ECF Nos. 6 and 7), this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are the parties' briefs on the merits (ECF Nos. 15 and 16).

       The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  <u>See Howard v. Heckler</u>, 782 F.2d 1484, 1487 (9th Cir. 1986); <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  <u>See Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  <u>See Sprague v. Bowen</u>, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, <u>see</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, <u>see</u> <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

   For the reasons discussed below, the Commissioner's final decision is affirmed.


## I.  THE DISABILITY EVALUATION PROCESS

   To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  <u>See</u> 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

| | |
|---|---|
| Step 1 | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |

/ / /

2

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

3

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on November 4, 2014. <u>See</u> CAR 15.[1] In the application, plaintiff claims disability began on November 5, 2012. <u>See</u> <u>id.</u> Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on April 3, 2017, before Administrative Law Judge (ALJ) Christopher C. Knowdell. In a July 18, 2017, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): celiac disease, arthralgia, depression, and chronic fatigue syndrome;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: light work, except she is limited to occasional postural activities, she must avoid concentrated exposure to extreme heat, humidity, and cold, and she is limited to simple tasks with no public interactions;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

<u>See</u> <u>id.</u> at 17-24.

After the Appeals Council declined review on June 9, 2018, this appeal followed.

## III. DISCUSSION

In her opening brief, plaintiff argues: (1) the ALJ erred in rejecting her testimony as to the severity of her symptoms; (2) the ALJ ignored the requirements of 20 C.F.R. § 404.1520a in evaluating the severity of plaintiff's depression; and (3) the ALJ failed to properly evaluate the medical opinions from plaintiff's treating physician, Dr. Sutter.

/ / /

/ / /

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on December 4, 2018 (ECF No. 10).

## A.     Severity of Plaintiff's Depression

To qualify for benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).[2] In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe. See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923. An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. See Social Security Ruling (SSR) 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28). The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient. See id.

At Step 2, the ALJ determined that plaintiff's depression is a severe impairment. See CAR 17-18. Though plaintiff argues the ALJ failed to apply 20 C.F.R. § 404.1520a, plaintiff concedes: "In this case, the ALJ did this [applied § 404.1520a(b)(1)] and found that Plaintiff suffers from depression." See ECF No. 15, pg. 11. According to plaintiff, the ALJ failed to "apply the special technique to evaluate the severity of Plaintiff's mental impairment. . . ." Id. According to plaintiff: "At step two in this case, the ALJ did not provide a narrative of his rationale. . . ." Id. at 12. Plaintiff argues the matter must be remanded.

/ / /

/ / /

/ / /

---

[2]     Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521, 416.921.

Plaintiff's argument is not persuasive. Though the ALJ did not provide a narrative discussion supporting his conclusion at Step 2 that plaintiff's depression is a severe impairment, the court finds no error given that the ALJ did in fact find the impairment to be severe. Plaintiff has not indicated how the lack of a narrative discussion at Step 2 resulted in any prejudice given that the ALJ rendered a favorable determination as to the severity of plaintiff's depression. While plaintiff references medical sources who concluded plaintiff's depression is extremely limiting, plaintiff confuses the standard applicable at Step 2 with the standard at Step 4 for determination of residual functional capacity. To what extent plaintiff's depression presents more than minimal limitations on her ability to work is not relevant at Step 2.[3]

### B. Evaluation of Medical Opinions

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016).

_____

[3]     Notably, plaintiff raises no arguments concerning the ALJ's evaluation of depression and residual functional capacity at Step 4.

6

Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so.  See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

1  professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

2  without other evidence, is insufficient to reject the opinion of a treating or examining

3  professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

4  conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

5  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see

6  also Magallanes, 881 F.2d at 751.

7          1.     The ALJ's Analysis

8          At Step 4, the ALJ considered the medical opinion evidence in determining

9  plaintiff's residual functional capacity.  See CAR 21-22.  As to treating sources, the ALJ stated:

> I have considered the multiple physician's statement[s] completed for
> purposes of long-term disability insurance benefits (see Ex. 9F).  In these
> statements, it was asserted that the claimant's physical impairments were
> "Class 4," indicating "marked limitation – capable of minimal activity"
> (see Ex. 9F, pp. 7 and 12).  I give no weight to these ratings because they
> are not supported by the evidence at the hearing level as discussed above,
> including the claimant's capacity for skiing and traveling.  The ratings are
> also not assessments of the claimant's residual functional capacity for
> purposes of Social Security disability determination and thus, they have
> little probative value.
>
> The claimant's treating doctor, Charles Sutter, M.D., also completed a
> "Chronic Fatigue Syndrome Residual Functional Capacity Questionnaire"
> on May 26, 2016, in which he indicated the claimant's fatigue, celiac
> disease and arthralgia frequently interfered with her attention and
> concentration and generally limited her to less-than-sedentary activities.
> He indicated the claimant could not sit or stand for more than one hour at
> a time and that the claimant had been at this level of functioning for over
> four years (Ex. 13F).  I find these limitations are not consistent with the
> rather limited medical treatment the claimant has received to date, as well
> as the physical activities she reported as noted above on a longitudinal
> basis (traveling and skiing).  This checklist-style form appears to have
> been completed based on the claimant's subjective complaints only and
> includes only conclusions regarding exertional limitations without
> objective rationale for those conclusions.  It is noted that Dr. Sutter
> previously completed a similar form on April 20, 2016, in which he
> indicated the claimant could sit for four hours and stand and/or walk for
> two hours total, but not continuously (Ex. 14F, p. 67).  The file shows that
> the claimant and her representative had some role in advising Dr. Sutter on
> how to complete the form with respect to question number 10, as he
> revised the form and added further limitations in the May 26, 2016, form
> (see Ex. 14F, p. 205).  The foregoing suggests that the doctor apparently
> relied quite heavily on the subjective report of symptoms and limitations
> provided by the claimant in completing the assessments and this renders
> them less than persuasive.
>
> CAR 21.

8

## 2.   Plaintiff's Contentions

Plaintiff argues the ALJ erred because he ". . .never acknowledged or addressed the central issue regarding Plaintiff's residual functional capacity – specifically, the effect her persistent fatigue symptoms and need to sleep 12 to 16 hours per day has on her ability to perform work tasks on a sustained, full-time basis."  Plaintiff adds:

> . . . The ALJ's rejection of a long-time treating doctor's opinion is reversible error where the ALJ does not even mention the doctor's stated grounds for concluding Plaintiff is disabled. *See Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988) [holding ALJ must, at a minimum, provide specific, legitimate reasons for rejecting physician's opinion]; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).
>
> In addition, Dr. Sutter completed two residual functional capacity questionnaires specific to this Social Security proceeding. AR at 485-486, 932-933. The limitations Dr. Sutter set forth in his RFC questionnaires include that Plaintiff's fatigue symptoms frequently interfere with her attention and concentration, she has good and bad days, and on average she is able to sit a total of 2 to 4 hours, approximately, in a competitive work situation but not continuously. *See id*. Consistent with Dr. Sutter's earlier private disability certifications that she needs to sleep between 12 to 16, such limitations preclude all competitive work. *See* AR at 95; SSR 96-9p [sedentary work generally requires sitting 6 hours per day and attending work 5 days per week, 8 hours per day].
>
> However, the ALJ also rejected Dr. Sutter's opinions set forth in his RFC questionnaires. AR at 21. Here, the ALJ again gave a general reason that "these limitations are not consistent with the rather limited medical treatment the claimant has received to date, as well as the physical activities she reported as noted above on a longitudinal basis (travelling and skiing)." *Id*. But as detailed above, the ALJ's characterization of Plaintiff's travelling and skiing activities is a plain distortion of the record and not supported by substantial evidence. The ALJ also never mentioned that treating doctors encouraged Plaintiff to engage in activities as tolerated. *See* AR at 351, 611. On this record, it was not rational to discredit Dr. Sutter's opinions based upon Plaintiff's limited activity.
>
> Moreover, in the context of CFS, it was illogical and legal error for the ALJ to reject Dr. Sutter's opinions based on a lack of aggressive treatment. As this Court recently held, "an ALJ may not reject a physician's opinion based on conservative care unless the record incites that more aggressive treatment options were 'appropriate' and 'available.'" *Miranda v. Comm'r. of Soc. Sec*., no. 2:17-cv-1653-DMC, 2019 U.S. Dist. LEXIS 5046 at *29 [citing *Lapeirre-Gutt v. Astrue*, 382 Fed.App'x. 662, 664 (9th Cir. 2010); *Schultz v. Colvin*, 32 F. Supp.3d 1047, 1060 (N.D. Cal. 2014). According to the medical consensus, including that from the U.S. Centers for Disease Control and Prevention, no cure or approved treatment exists for CFS.7 Treatment records also show that Dr. Sutter, and specialists he referred Plaintiff to, acknowledged her persistent fatigue is likely "her new baseline" and, with no available cure, would need to be managed rather than aggressively treated, as the ALJ's reasoning seems to misunderstand. *See* AR at 351, 438, 846.

/ / /

Finally, the ALJ claimed Dr. Sutter's opinions are not credible because Plaintiff and her attorney asked him to provide it. AR at 21. While the ALJ is flatly wrong that the record contains any indication Plaintiff's attorney asked Dr. Sutter to do anything, the ALJ construed Plaintiff's involvement in obtaining the RFC questionnaires to "suggest" that Dr. Sutter "relied quite heavily" on limitations Plaintiff provided rather than his own professional judgment. *See id.* This bold assertion – that Dr. Sutter essentially fabricated his opinions at Plaintiff's insistence – lacks support from the record and is contrary to controlling circuit court authority.

In *Reddick v. Chater*, the Ninth Circuit held it is not legitimate for an ALJ to reject a doctor's opinion on the basis that a claimant requested it, absent evidence of impropriety. 157 F.3d 715, 726 (9th Cir. 1998) ["We clarify here that, in the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it."]. In this case, there is no evidence that the substance of Dr. Sutter's opinion is a result of him taking direction from Plaintiff.

The only specific evidence the ALJ could identify to purportedly show Dr. Sutter was improperly influenced by Plaintiff relates to her request that Dr. Sutter complete a second RFC questionnaire one month after his original submission. AR at 21 [citing AR 691]. However, the second RFC questionnaire is not materially different from Dr. Sutter's first. The ALJ focused specifically on question number 10 on the forms for his adverse finding. On the first submission, Dr. Sutter checked a box next to question 10 indicating Plaintiff could sit approximately 4 total hours in a work day but not continuously. AR at 932. On the second form, after Plaintiff wrote seeking some unspecified clarification, Dr. Sutter wrote in the margin next to question 10 that he estimates Plaintiff could tolerate approximately "2–3 hours a day total either sitting or standing on good days, less than one on bad days." AR at 486. All other responses on each form are the same.

Given the check-the-box nature of the form, together with the fact Dr. Sutter was asked for approximations and estimates, it is not at all clear the limited difference in the response matters. But if the record is ambiguous, the ALJ had an affirmative duty to develop the record to allow for a fair and proper consideration of the opinions. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) [ALJ's duty to develop triggered based on ambiguity and may be satisfied by subpoenaing claimant's physician or submitting questions to the physician]. Dr. Sutter has treated Plaintiff for years and there is not another medical professional in this case more familiar with Plaintiff's history and condition. His opinions merited close, careful attention before being dismissed in the entirety.

Importantly, the clinical basis for Dr. Sutter's estimates are sound in that treatment records consistently report Plaintiff sleeps 12 to 16 hours daily, is unable to get out of bed for multiple days at a time, falls asleep during activities like visiting a museum and reading, and exhibits the medically-accepted signs and symptoms of CFS. *See* AR at 287-88, 291, 337-38, 341-43, 350-52, 391-92, 404-405, 438-39, 625-26, 847-48, 1074. The ALJ never explained why this evidence did not support Dr. Sutter's opinions. Given that Dr. Sutter's opinions are consistent with his treatment reports, the ALJ's bold inference that Dr. Sutter fabricated his opinion to please his patient is especially troubling. The ALJ certainly did not identify evidence of "actual improprieties" required to reject a medical

opinion merely because a claimant requested it from a doctor. *See Reddick*, 157 F.3d at 726. This incomplete, generalized treatment of a treating doctor's opinion is legal error.

Under the Commissioner's regulations in place at the time Plaintiff applied for benefits, the weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). Ordinarily, more weight is given to the opinion of a treating professional, like Dr. Sutter, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1295 (9th Cir. 1996).

A contradicted opinion of a treating or examining professional may be rejected only if the ALJ provides "specific and legitimate" reasons that are supported by substantial evidence. *Lester*, 81 F.3d at 830. But the opinion of a non-examining physician is insufficient to reject the opinion of a treating or examining physician. *Lester*, 81 F.3d at 831.

Finally, the Commissioner's regulations instruct the ALJ to evaluate every medical opinion from a treating physician according to specified factors that include (i) length of the treatment relationship and the frequency of examination, (ii) nature and extent of the treatment relationship, (iii) supportability of the opinion, (iv) consistency with the record, (v) specialization of the physician, and (vi) other factors such as the extent to which the treating doctor is familiar with other medical evidence in the case record. 20 C.F.R. § 404.1527(c)(2); *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017).

With respect to Dr. Sutter's opinions, the ALJ failed to expressly apply the factors that Social Security's regulations and circuit authority direct must guide the finding whether to give weight to medical opinions. More faithful adherence to the regulation's requirement and the holding from *Trevizo* would go a long way in avoiding the erroneous reasoning seen here. While the ALJ is charged with resolving conflicts in the medical evidence, that does not empower him to reject a treating doctor's conclusions based on reasoning that conflicts with the medical consensus as to the nature of CFS and by adopting an incomplete, at times distorted characterization of the record. For the foregoing reasons, the ALJ's rejection of Dr. Sutter's opinions was not legitimate, sufficiently specific, or supported by substantial evidence. Plaintiff respectfully asks the Court reverse the final administrative decision in this case.

3.    Disposition

Dr. Sutter's opinions in this case are expressed in two questionnaires he completed.  Specifically, Dr. Sutter completed a Chronic Fatigue Syndrome Residual Functional Capacity Questionnaire in May 2016.  See CAR 485-86, 554-55.  Dr. Sutter also completed a form by the same name in April 2016.  See id. at 552-53, 932-33.  These records are marked as Exhibits 13F and 14F in the record.

/ / /

/ / /

11

In the May 2016 questionnaire, Dr. Sutter listed the following symptoms supporting his opinion: fatigue, general malaise, muscle weakness, loss of manual dexterity, frequency of urination, difficulty thinking and concentrating, abdominal pain, dizziness and loss of balance, swelling, headaches, and chronic skin infections. See CAR 485, 554. Dr. Sutter opined that plaintiff's symptoms are severe enough to frequently interfere with attention and concentration. See id. He also opined that plaintiff is severely limited in her ability to deal with work stress. See id. Dr. Sutter indicated that plaintiff was not at the time taking any medications. See id. at 485, 555. According to Dr. Sutter plaintiff can continuously sit for 1 hour, continuously stand for 1 hour, and sit/stand/walk a total of "about 2 hours" in an 8-hour workday. Id. The doctor stated plaintiff has been functioning at this level for "4+" years. Id.

In the April 2016 questionnaire, Dr. Sutter listed the same symptoms and limitations except as to sitting, standing, and walking. According to the April 2016 questionnaire, plaintiff can continuously sit for 2 hours at a time, continuously stand for 1 hour at a time, stand/walk for a total of 2 hours in an 8-hour workday, and sit for a total of 4 hours in an 8-hour workday. See id. at 553, 933.

The ALJ rejected Dr. Sutter's conclusions citing four reasons. First, the ALJ found the limitations inconsistent with plaintiff's history of limited medical treatment. See id. at 21. Second, the ALJ found Dr. Sutter's limitations inconsistent with plaintiff's reported activities of skiing and traveling. See id. Third, the ALJ determined that Dr. Sutter's opinions are unsupported by objective evidence. See id. Fourth, the ALJ speculated that plaintiff and her representative "had some role" in advising Dr. Sutter how to prepare the forms. Id.

As to whether plaintiff or her counsel "had some role" in the preparation of Dr. Sutter's reports as the ALJ speculates, the court finds this reason to be invalid on the current record. Specifically, there is no evidence that this "role" extended beyond simply asking Dr. Sutter to prepare the questionnaires.

/ / /

/ / /

/ / /

The court also finds the ALJ's rationale, that Dr. Sutter's opinions are unsupported by objective findings, to be insufficient. As Dr. Sutter's forms make clear, his opinions are based on the symptoms he cited and there is no suggestion that these symptoms are not based on the doctor's objective findings. To the contrary, the symptoms outlined by the doctor are the objective findings.

The ALJ's other cited reasons – inconsistency with limited medical treatment and inconsistency with activities such as skiing and traveling – support the ALJ's conclusion. As the ALJ outlined in the hearing decision, plaintiff's history of treatment is indeed limited. See CAR 20-21. Moreover, the record reflects that plaintiff engaged in skiing and international travel since the alleged onset date. In particular, plaintiff traveled to Canada in 2013 and 2014 and she stated she enjoyed skiing. See id. at 20. Plaintiff's ability to travel to Canada from California indicates an ability to sit/stand for more than a total of 2 hours at a time, contrary to Dr. Sutter's May 2016 report. Likewise, the ability to ski undermines the doctor's opinions of extreme limitation.

Most troubling, however, is the inconsistency between Dr. Sutter's reports even though they were prepared only a month apart. In April 2016 Dr. Sutter opined that plaintiff can sit for a total of 4 hours in an 8-hour workday. In May 2016, however, Dr. Sutter opined that plaintiff can only sit for a total of 2 hours in an 8-hour workday. There is no objective evidence outlined in the doctor's reports to account for this discrepancy.

For all of the foregoing reasons, the court finds no reversible error with respect to the ALJ's analysis of Dr. Sutter's opinions.

### C.     Plaintiff's Credibility

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative

evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

///

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

### 1. The ALJ's Analysis

At Step 4, the ALJ evaluated the credibility of plaintiff's statements and testimony to determine residual functional capacity. See CAR 19-21. The ALJ summarized plaintiff's statements and testimony as follows:

> The claimant alleged disability due to fatigue, joint pain, and abdominal pain. She asserted in a fatigue questionnaire that she had difficulty completing house chores, noting that her husband assisted with caring for their children and doing most chores and errands on days she was unable to due to lack of energy. She maintained that she could not walk due to joint pain, but she was able to ride bikes around her neighborhood, dance in the living room, and do stretches and other exercises at home. The claimant further indicated she had difficulties with her memory, concentration and focus. She noted she did not tolerate stress well (Ex. 4E). The claimant described similar functional limitations in her Adult Function Report dates April 3, 2015. She also indicated she was unable to

tolerate noise and limited her social interactions with others. She noted she was not taking any medication for her alleged conditions at the time of the report (Ex. 7E). However, the claimant later reported that she was taking a number of vitamins along with Benadryl and Voltaren (Ex. 13E).

At the hearing, the claimant also testified to a generally sedentary lifestyle at home with minimal activities due to fatigue and pain, as well as memory and concentration issues. She said she could lift no more than five pounds and she had trouble using the hands because they were always cold. However, she disclosed that she was on a special diet that had helped to alleviate some of her abdominal pain. She acknowledged that she no longer had to stay in bed all day and she could do some light household chores. The claimant further testified to being able to go skiing (approximately eight times during the past season at Squaw Valley skiing intermediate/blue rums [sic]) and wakeboarding, as well as travel to Quebec by plane to visit her family. She also indicated she could do some yoga at home and attend church services, although she said she felt tired after about 45 minutes at church. . . .

CAR 19-20.

The ALJ found plaintiff's statements and testimony not credible. See id. at 20. As to plaintiff's activities, the ALJ stated: "These activities, together with the objective evidence discussed below, on a longitudinal basis, are generally not consistent with disabling fatigue and pain symptoms that the claimant has alleged; they provide some support for the residual functional capacity set forth in this Finding." Id. The ALJ added:

The record shows the claimant sought treatment for weight loss and abdominal pain secondary to celiac disease (Ex. 2F, p. 3). Imaging of the claimant's abdomen indicated no acute disease process (Ex. 2F, p. 9). However, celiac serology was positive and the claimant placed herself on a gluten-free diet with partial relief of symptoms (Ex. 3F, p. 4). A tissue biopsy indicated no significant findings (Ex. 3F, pp. 14-15). The claimant refused additional testing and a trial of medications in January of 2013 (Ex. 5F, p. 2). Her condition was diagnosed as chronic fatigue (Ex. 5F, p. 10). The claimant was nonetheless able to travel to Quebec in August of May [sic] of 2013 (Ex. 5F, p. 15). She reported in August of 2014 that her level of fatigue improved when travelling and she was exercising by swimming and wakeboarding; she said she felt worse without exercise and skiing felt better. The claimant had just returned from Canada, another indication that she was functioning well enough to travel and sit through extended roundtrip flights (Ex. 8F, p. 3). She indicated that she enjoyed skiing despite complaints of fatigue (Ex. 16F, p. 149). Her physical examinations indicated generally normal findings throughout (see Exs. 2F, pp. 4 and 14; 3F, p. 5; 5F, p. 6; and 8F, pp/ 6-7).

The subsequent progress notes indicate that the claimant had no significant medical treatment for any acute issues through 2016 (see Ex. 14F, pp. 154-215). X-ray imaging of the claimant's hands showed early osteoarthritis in the finger joints but no signs of inflammatory arthritis

were noted; the claimant refused an MRI study of her left hand (Ex. 14F, pp. 273 and 359-360). She had no further workups for any other musculoskeletal complaint. The claimant reportedly remained capable of skiing and she was taking supplements, eating red cabbage, and using Voltaren, Motrin, and Benadryl, all of which helped with her symptoms (Ex. 16F, p. 117). There is no evidence that the claimant required further diagnostic workups or use of steroid medications or prescription pain medications for exacerbation of her bowel or joint issues; she remained on a number of supplements and a special diet for celiac disease (Ex. 16F, pp. 26 and 60-61). Lab results were apparently also unremarkable (Ex. 16F, p. 79). A physical examination of the claimant in March of 2016 was again unremarkable (Ex. 16F, p. 117). She again was able to go skiing in May of 2016 and yet, had trouble getting out of bed to go to her doctor's appointment that month (Ex. 16F, p. 60). There are no treatment notes in the file for 2017.

CAR 20-21.

2.     Plaintiff's Contentions

According to plaintiff, the ALJ's analysis is flawed because it is based on a misunderstanding of plaintiff's chronic fatigue syndrome (CFS). Plaintiff contends:

> The ALJ's reasoning in this respect is contrary to the medical consensus regarding the nature of CFS, as published by the U.S. Department of Health and Human Services, which findings the Social Security Administration has expressly adopted. *See* Social Security Ruling (SSR) 14-1p. In discrediting Plaintiff, the ALJ did not account for the nature of CFS and its symptoms, and for the following reasons, Plaintiff respectfully asks that the Court remand this matter. *See Reddick v. Chater*, 157 F.3d 715, 723 (9th Cir. 1998) [reversible error where the ALJ's adverse credibility finding reflected a misunderstanding of CFS]; *see, also, Salomaa v. Honda Long Term Dis. Plan*, 642 F.3d 666, 677-78 (9th Cir. 2011) ["There is no blood test or other objective laboratory test for chronic fatigue syndrome . . . [and] conditioning an award on the existence of evidence that cannot exist is arbitrary and capricious."].

Plaintiff adds:

> The ALJ relied on two reasons in disregarding Plaintiff's testimony – that the objective evidence and Plaintiff's activities "are generally not consistent" with her allegations. *See* AR at 19-22. These reasons, in the context of CFS, mischaracterize the record and should not be held to satisfy the stringent "clear and convincing" standard required to reject Plaintiff's testimony.
> First, regarding a lack of objective evidence, the ALJ's reasoning is erroneous as a matter of law. It is well settled that "after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *see also Bunnell v. Sullivan*, 947 F.2d 341, 347 (9th Cir. 1991) ["If an adjudicator could reject a claim for disability simply because a claimant fails to produce medical evidence

17

supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings."].

Such reasoning is illogical in a CFS case where the medical consensus, along with Ninth Circuit case law, acknowledge there are no diagnostic tests to measure or identify the impairment. *See Reddick*, 157 F.3d at 726 ["Chronic fatigue is defined as '*self-reported* persistent or relapsing fatigue lasting six or more consecutive months.'"] [emphasis original, citation omitted]; *Salomaa*, 642 F.3d at 677 ["There is no blood test or other objective laboratory test for chronic fatigue syndrome."]. Social Security's own rules also recognize CFS eludes objective diagnostics. *See* SSR 14-1p [explaining various "Diagnostic Symptoms" of CFS may be established by a patient's self-reports]; *see also* AR at 611 [Dr. Sutter advising no diagnostic test for CFS]. As such, the ALJ's reasoning that the "objective evidence" is "generally not consistent" with Plaintiff's symptom testimony is specious on its face.

Further, the undisputed fact is that the medical evidence in this case fully supports that Plaintiff suffers from CFS and its associated limitations. Plaintiff's persistent fatigue, despite sleeping 12 to 16 hours a day, is clinically documented throughout the record over a period of years. *See* AR at 287-88, 291 [could not get out of bed for 2 days], 297-98 [severe fatigue], 337-38, 341-43, 350-52 [requires minimum of 12 hours sleep and still tired], 355-56 [needs daily naps], 391-92 [sleeping 12 to 16 hours per day], 404-405 [falls asleep while reading], 438-39 [fell asleep at museum; sleeps 12 to 14 hours per day], 625-26 [needs daily naps despite full-time help at home; sleeps for 2 days without daily nap], 847-48, 1074 [difficulty getting out of bed following activity]. According to Social Security, this clinical evidence is the "hallmark of CFS." *See* SSR 14-1p. Treatment records support Plaintiff's claim of disability and are not substantial evidence of an ALJ finding that Plaintiff's symptoms are not credible.

Indeed, the evidence also includes clinical documentation of symptoms which Social Security labels "additional indications of CFS." SSR 14-1p(I)(B). Evidence that Plaintiff's illness meets these additional criteria is abundant and consistent through the record. *See* AR at 277 [abdominal pain], 287 [abdominal pain], 291 [hand/joint pain, abdominal pain], 297-98, 303 [chronic abdominal pain, normal endoscopy], 307, 337-38 [poor sleep patterns], 341-42 [memory and concentration problems, poor sleep, headaches, fatigue after activity, abdominal pain], 355-56 [post-exertional fatigue], 391 [concentration problems], 399, 438 [headaches, muscle aches], 847 [joint pain without swelling, muscle aches], 852-53 [joint pain without swelling, muscle aches], 854-55 [muscle tenderness], 858-59 [joint pain, muscle aches].

Moreover, the record includes positive findings with respect to the few laboratory tests Social Security recognizes often correlate to CFS. Plaintiff's blood tests found elevated Epstein-Barr virus antibodies and abnormal immunoglobulin levels. *See* AR at 367-68; SSR 14-1p(II)(C)-(D). Social Security's retained consultant also administered a series of clinical tests and found significant memory and neurological deficits, which Social Security has ruled is further medical support of CFS. *See* AR at 455-56; SSR 14-1p(II)(E).

On this record, there is no factual support for the ALJ's conclusion that the "objective" evidence is inconsistent with Plaintiff's complaints regarding her CFS. The record is replete with clinical evidence that Social Security's own rules recognize as the hallmarks of this debilitating disease, CFS. As such, it was both legally and factually erroneous for the

ALJ to discredit Plaintiff due to a purported lack of "objective" evidence, after the ALJ specifically found sufficient medical evidence of Plaintiff's impairment. *See Burch*, 400 F.3d at 680; *Bunnell*, 947 F.2d at 347.

The ALJ's second reason for discrediting Plaintiff – that her activities "are generally not consistent" with her allegations – also lacks for context and represents legal error. *See* AR at 19-22. As a legal matter, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) [quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) [ellipsis omitted]. Rather, a claimant's activities may discredit her testimony regarding symptom severity only when (i) the activities "meet the threshold for transferable work skills" or (ii) the activities contradict her testimony. *See id*. [citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)].

Here, the ALJ failed to engage meaningfully with either aspect of this standard. The ALJ did not identify any contradictions regarding Plaintiff's testimony or at all address which of Plaintiff's limited activities transfer to a competitive work setting. Instead, the ALJ simply offered the conclusion that "her ability to do some chores, exercise, travel, and ski regularly convey some ability for exertion that is generally inconsistent with disabling functionality." AR at 22. Again, however, even if this bare conclusion was legally sufficient, which it is not, it remains a plain distortion of the record and not supported by substantial evidence.

The ALJ made much of the supposed notion that Plaintiff goes snow skiing "regularly" without ever acknowledging Plaintiff's actual testimony as to the limited extent she engaged in this activity. Contrary to the ALJ's vague characterization, Plaintiff's testimony regarding skiing is consistent with the claim her CFS symptoms are persistent and debilitating. Since the onset of her condition, Plaintiff testified she went from an expert, prolific skier, who would ski the most rigorous areas of the mountain for more than six hours per day, to only being able to ski a few times per year, for at most one hour per day, limited to groomed trails. *See* AR at 73-77. In addition, Plaintiff explained she undertakes an elaborate routine to prepare herself before each attempt to ski, does not carry her equipment, and stays in lodging within 100 hundred feet from the lift to avoid walking any distance. *Id*. The ALJ similarly mischaracterized Plaintiff's testimony as to wakeboarding, which she rarely even attempts to engage in, and household chores, which she cannot complete and relies on her husband to perform. *See* AR at 70-73, 625-26, 660.

Equally prejudicial, the ALJ's limited analysis never acknowledged that Plaintiff's doctor encouraged Plaintiff to make efforts to maintain activity and exercise. AR at 611. The ALJ also never acknowledged that medical reports reflect Plaintiff suffers post-exertional fatigue after engaging in activity, consistent with the known symptomatology of CFS. *See* AR at 350-51, 355-56, 438, 790, 932. On review, the Court should not defer to the ALJ's findings given they rely on gross mischaracterizations of the record.

And again, under Social Security's regulations and longstanding case authority, it is largely fallacious for the ALJ to nitpick Plaintiff's attempts at activity as grounds to discredit her. *See* 20 C.F.R. § 404.1527(c) [setting forth the agency does not generally consider "activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs" to be substantial

gainful activities]; *see also Reddick*, 157 F.3d at 722 [holding "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"] [citations omitted]. For these reasons, Plaintiff respectfully asks the Court to reverse the ALJ's final decision in this matter.

3.     Disposition

In this case, plaintiff alleges total disability primarily due to fatigue-related symptoms. The ALJ found plaintiff's statements and testimony of totally disabling symptoms to be not credible for two reasons. First, the ALJ cited plaintiff's limited medical treatment. Second, the ALJ cited plaintiff's daily activities, particularly plaintiff's skiing and travel. Plaintiff contends the ALJ's citation to the scant medical record is inappropriate because there is generally no objective evidence of chronic fatigue syndrome. Plaintiff also contend the ALJ overstated her activities of skiing and traveling.

With respect to the ALJ's citation to the limited record of medical treatment sought by plaintiff, the court rejects plaintiff's argument. While it is true that chronic fatigue syndrome is typically shown by subjective complaints and not necessarily objective findings, the ALJ in this case did not cite a lack of objective findings supporting chronic fatigue syndrome as a rationale for findings plaintiff's statements and testimony not credible. Rather, the ALJ noted the lack of medical treatment sought by plaintiff. Specifically, the ALJ observed that plaintiff did not regularly seek medical treatment for her conditions, refused some recommended treatment, and had little treatment in 2016 and none in 2017.

With respect to plaintiff's skiing and traveling, the court finds that the ALJ has not, as plaintiff claims, overstated these activities. In particular, plaintiff testified as follows at the administrative hearing:

Q:     Do you do any snow skiing?

A:     Yes.

Q:     And did you do any snow skiing so far this season?

A:     Yes.

Q:     Where have you gone skiing at?

20

|  |  |  |
|---|---|---|
| A: | At Squaw Valley. |
| Q: | Mm-hmm.  What kind of runs do you do up there? |
| A: | Mostly blue runs – |
| Q: | Mm-hmm – |
| A: | -- then again, I, I know it sounds, I know it sounds like contradictory, but I, I used to be an expert skier – |
| Q: | Mm-hmm – |
| A: | -- so I could really ski anywhere on that mountain. |
| Q: | Mm-hmm. |
| A: | I mean, anywhere, like the bumps and the powder and all that. |
| Q: | What kind of skiing do you, I mean, you're doing the blue, you're doing the, the intermediate runs at Squaw? |
| A: | Yeah, and that's – |
| Q: | How many days have you gong skiing this season so far? |
| A: | Well, probably like eight. . . . |

CAR 73-74.

Though plaintiff also testified that she requires a lot of preparation to be able to ski, such as taking a bath to warm up and waiting some time after eating to digest, she testified that she is able to ski an hour at a time on intermediate level runs.  See id. at 74-75.  The court find that this testimony clearly undermines plaintiff's statements of totally disabling chronic fatigue syndrome symptoms.

Because the ALJ cited legally sufficient reasons supported by substantial evidence to discount the credibility of plaintiff's statements and testimony, the court finds no error in the ALJ's credibility analysis.

/ / /

/ / /

/ / /

/ / /

21

# IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (ECF No. 15) is denied;

2.  Defendant's motion for summary judgment (ECF No. 16) is granted;

3.  The Commissioner's final decision is affirmed; and

4.  The Clerk of the Court is directed to enter judgment and close this file.

Dated:  December 6, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE